IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY WOLSKI, | : Civil Division |
|     Plaintiff | : |
| v. | : No. |
| | : |
| CITY OF ERIE, | : |
|     Defendant | : |

## **COMPLAINT**

Plaintiff, Mary Wolski, alleges her Complaint against Defendant, City of Erie, as follows:

### NATURE OF THE ACTION

1. This is an action against Defendant, City of Erie, under Title I of the Americans With Disabilities Act of 1990 ("ADA"), ADA §§ 101 to 108 (42 U.S.C.A. §§ 12111 to 12117) and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq., for its unlawful employment practices on the basis of disability. Defendant, City of Erie, intentionally has discharged Plaintiff because of her disability, in violation of Plaintiff's federally protected rights.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C.A. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-5(f)(1) and (3), pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. This Court has supplemental jurisdiction over the

claim brought pursuant to the PHRA pursuant to 28 U.S.C.A. § 1367.

3. The employment practices alleged herein to be unlawful were committed in the City of Erie, Pennsylvania, and consequently venue in this judicial district is proper pursuant to 28 U.S.C.A. § 1391.

## PARTIES

4. Plaintiff, Mary Wolski, is a citizen of the United States and a resident of Erie, Pennsylvania.

5. Plaintiff is a qualified individual with a disability within the meaning of the American with Disabilities Act.

6. Defendant, City of Erie, is a Pennsylvania municipal corporation, at all times relevant hereto is a governmental entity in the State of Pennsylvania, and has continuously had and does now have at least fifteen (15) employees.

7. At all relevant times, Defendant has continuously been engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C.A. § 12111(5), and Section 107(7) of the ADA, 42 U.S.C.A. § 12117(a), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C.A. § 2000e(g) and (h).

8. Defendant is an employer within the meaning of the Americans with Disabilities Act.

## PROCEDURAL REQUIREMENTS

9. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in Pittsburgh, Pennsylvania. The charge was

filed within three hundred (300) days after the occurrence of one or more of the unlawful employment practices alleged herein.

10. On July 22, 2008, the EEOC issued Plaintiff a Notice of Right to Sue letter, stating that Plaintiff could file an action under the ADA. Plaintiff filed the complaint in this case within ninety (90) days after the date on which she received the Notice of Right to Sue.

11. Consequently, all jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and Plaintiff has exhausted her administrative remedies as required by law.

## STATEMENT OF FACTS

12. Plaintiff was employed as a firefighter in the Defendant's Fire Department since 1997. Plaintiff was the first female firefighter to join the department.

13. Plaintiff compiled on exemplary record as a firefighter and was well respected by her peers in the department.

14. At the time of her termination, Plaintiff performed her duties as a firefighter by serving as a driver.

15. In April 2005, Plaintiff's mother was diagnosed with MRSA which led to nine months of hospitalizations, multiple surgeries and ultimately a prolonged, painful death at the age of 69 on December 24, 2005 when she was removed from a ventilator.

16. Plaintiff had a very close relationship with her mother who raised

3

Plaintiff and her siblings as a single mother. Plaintiff used FMLA and personal leave in order to provide support and succor to her mother on a daily basis.

17. Plaintiff felt personal responsibility because she could not save her mother from her traumatic death, and she suffered from complicated grief as a result of her mother's very painful, prolonged death. As a result, Plaintiff started suffering anxiety and panic attacks in the Spring of 2006. In September 2006, Plaintiff went on sick leave.

18. Plaintiff's primary care physician recommended that Plaintiff consult a psychiatrist to help her, which she did; and Plaintiff took some medications for her mental status as she developed a severe depression in 2006.

19. In December 2006, shortly after the anniversary date of her mother's death, overwhelmed by severe depression and medication side effects, Plaintiff tried to end her pain through a combination of a pill overdose and the creation of smoke inhalation by burning clothes in the bathtub at her father's house, which was unoccupied due to him living in a rehabilitation facility after breaking his hip.

20. Plaintiff's efforts, in her severe depression, were to no avail, so she put out the fire in the tub with a pan of water and then passed out on the couch, where her family found her. As a result, Plaintiff required medical attention.

21. Plaintiff was first hospitalized in Pittsburgh and then transferred to Erie where her medications for her mental status were changed before she was released on January 9, 2007. Plaintiff was diagnosed with severe depression single episode.

22. An investigation was conducted by the Erie Police Department into the events surrounding the incident at the residence of Plaintiff's father.

23. On March 6, 2007, Plaintiff told Defendant's Fire Chief Anthony Pol at a fellow firefighter's retirement party that she was ready to return to work and asked what she needed to do in order to return to work. Plaintiff in March 2007 saw her psychiatrist who cleared her to return to work with the Defendant.

24. Chief Pol stated that she could not return to work until the criminal investigation was complete in order to determine whether she would be subject to criminal charges.

25. On April 3, 2007, Plaintiff's sick time was depleted, so Chief Pol placed her on paid administrative leave.

26. At that time, Plaintiff had completely recovered from her medical condition, she did not pose a threat to herself, colleagues or the public and she was able to perform all of her essential job functions without any limitations.

27. On April 10, 2007, Plaintiff was notified by her attorney, David Ridge, that no criminal charges would be filed against her based upon the District Attorney's review of the matter.

28. On April 11, 2007, Chief Pol signed a termination letter directed to Plaintiff, advising her inter alia, "This incident renders you presumptively unsuited to be a firefighter, as you pose an ongoing threat to the safety of the public, other firefighters and yourself, having set a fire in a residence." He also notified Plaintiff she could respond to the termination letter by contacting the Civil Service Board.

She received the termination letter on April 12, 2007.

29. Plaintiff did contact the Civil Service Board to contest her termination and to request a hearing, which led to a hearing conducted in piecemeal fashion on multiple days over a period of several months, and ultimately a decision was rendered in December 2007 that did not disturb Plaintiff's termination as a firefighter in Defendant's Fire Department.

30. Constance Cook, Manager of Defendant's Human Resources Department, testified at Plaintiff's civil service hearing on behalf of the Defendant.

31. Cook acknowledged that she perceived or regarded Plaintiff as having a disability under the American With Disabilities Act because of her mental status; concluded, together with others in Defendant's management, that no reasonable accommodation could be made; that Plaintiff posed too grave of a risk; that the presumption that Plaintiff was a threat was based upon Plaintiff still on medication and that "she's not completely stable;" and that at the time when Defendant terminated Plaintiff, no written request had been made to Plaintiff asking for medical records or documentation or for a list of medications in order to assess Plaintiff's suitability to return to work.

32. After her termination, Plaintiff produced to Defendant a letter from her psychiatrist, Lance A. Besner, M.D., clearing her to return to work, dated June 26, 2007 with a return to work date effective March 15, 2007. She also produced a letter from Dr. Besner dated August 6, 2007 in which he listed her current and previous medications, as well as her mental status.

33. Further, Plaintiff produced to Defendant her hospital records, together with Dr. Besner's records.

34. Plaintiff, through counsel, also offered to submit to periodic medical/psychiatric examinations to satisfy Defendant that she did not pose a threat and offered to have her medical records submitted to an expert selected by Defendant, which offers were refused by Defendant's representatives.

35. Defendant never submitted an authorization to Plaintiff to obtain her medical records before or after her termination, never asked her to submit to an IME, nor did the Defendant take any other steps to determine Plaintiff's mental status before terminating her and whether she posed a threat to anyone.

## COUNT ONE–VIOLATION OF ADA, TITLE I

36. Paragraphs 1 to 35 are incorporated herein by reference as if fully pleaded in this count.

37. Defendant intentionally discriminated against Plaintiff in violation of the ADA by its discharge of her, in that it discharged her because it regarded her as disabled, because she had a record of a disability and because of the disability from which she had recovered.

38. Defendant terminated Plaintiff as a direct threat, in violation of 29 CFR 1630.16 et seq. and 1630.2(r), by failing to follow said regulations adopted to implement the Equal Employment provisions of the ADA and, instead of relying on objective, factual evidence, Defendant terminated Plaintiff based upon subjective perceptions, irrational fears, stereotypes and patronizing attitudes. No

individualized assessment based upon objective criteria was performed by Defendant.

39. The acts alleged above, including Defendant's willful failure to allow Plaintiff to return to work after her hospitalization for severe depression because it regarded her as disabled or to find her another position, constitute unlawful employment practices in violation of the ADA, 42 U.S.C.A. § 12112(a), (b)(1), (b)(3), (b)(5)(A) and (B). All conduct alleged above occurred during a legally cognizable time period at Defendant's Fire Department.

40. Defendant's employment practices, as alleged above, deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee, and were motivated by Defendant's perception of Plaintiff as being disabled.

41. Defendant engaged in the above-described conduct against Plaintiff intentionally, with malice and in reckless disregard of Plaintiff's federally protected rights.

42. Plaintiff had a disability arising from a severe depression episode in December 2006, which prevented her from returning to her position as a firefighter driver in Defendant's employment until March 2007.

43. As a result, Plaintiff suffered, before her attempted return, from a disability within the meaning of the ADA.

44. Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, which Defendant willfully denied her.

45. Plaintiff was never offered a reasonable accommodation by the Defendant; however, after she was terminated, Defendant refused to consider her offers of reasonable accommodation as to periodic monitoring/examinations, an IME or any other reasonable accommodation to satisfy Defendant that she was not a direct threat.

46. As a direct and proximate result of said intentional and discriminatory conduct, Plaintiff has lost wages and other benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

47. The acts alleged above constitute unlawful employment practices in violation of the ADA, 42 U.S.C.A. § 12112(a), (b)(1), (b)(3), (b)(5)(A) and (B). All conduct alleged above occurred during a legally cognizable time period at Defendant's Fire Department.

48. Defendant's discriminatory conduct exhibited a willful and/or reckless indifference to Plaintiff's federally protected right to be free from disability discrimination.

**COUNT TWO–VIOLATION OF PHRA**

49. Paragraphs 1 to 48 are incorporated herein by reference as if fully pleaded in this count.

50. Plaintiff timely filed a charge of disability discrimination with the

Pennsylvania Human Relations Commission and has received notice from the Commission of her right to file a disability action in court.

51. At all times relevant, Defendant was an employer as defined in § 954 of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq., § 954, and employs over 700 employees.

52. Defendant discriminated against Plaintiff in violation of § 955 of the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

53. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has lost wages and other benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff (1) economic damages in the form of lost back pay, front pay, medical expenses and medical insurance premiums and other pecuniary losses, together with interest as permitted by law; (2) compensatory damages for mental pain and anguish in amounts to be proved at trial; (3) reinstatement; (4) attorneys' fees and costs of this action; (5) punitive damages in an amount to be proven at trial; (6) other affirmative relief necessary to eradicate the effect of Defendant's unlawful employment practices; and (7) such other and further relief as this Court deems

necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all the issues raised by the Complaint.

            Respectfully Submitted,

            KUBINSKI, SUSKO & SCHONTHALER

By: *s/Paul J. Susko, Esquire*
     Paul J. Susko, Esquire
     Pa. Supreme Court I.D. No. 25995
     135 East Sixth Street
     Erie, PA 16501-1267
     (814) 455-7612 Telephone
     (814) 461-8585 Fax
     paul@ksslawfirm.com

*Attorney for Plaintiff*